UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TRIKONA ADVISERS, LTD., <br> Plaintiff, <br><br> v. <br><br> RAKSHITT CHUGH, ET AL., <br> Defendants. | No. 3:11-cv-2015 (SRU) |

### RULING ON PLAINTIFF'S MOTION TO ALTER OR AMEND JUDGMENT

This case arose out of a corporate divorce between Aashish Kalra and Rakshitt Chugh, the former partners in the plaintiff, Trikona Advisers, Ltd. ("TAL"). Chugh is a named defendant alongside two entities related to him, Peak XV Capital Advisers, LLC ("Peak XV") and ARC Capital, LLC ("ARC").[1] TAL's claims center on allegations that while he was a member of TAL's board of directors, Chugh started Peak XV to compete with TAL and stole TAL's assets and customer database to assist Peak XV, and that Chugh deliberately thwarted TAL's business opportunities and blocked TAL's recovery of compensation in various litigations around the world.

The defendants moved for summary judgment, arguing that TAL's claims are barred by the doctrines of res judicata and collateral estoppel due to a January 31, 2013 Order and Decision of the Grand Court of the Cayman Islands ordering the winding up of TAL. *See* Mem. Supp. Mot. Summ. J. Ex. B (Winding Up Order and Judgment) (doc. # 308-4). On March 6, 2014, I granted summary judgment to defendants on the basis of collateral estoppel. TAL now moves for reconsideration of that decision, pursuant to Rule 59(e) of the Federal Rules of Civil

---

[1] Peak XV is actually several related entities: Peak XV Capital Advisers, LLC; Peak XV Capital, LLC; Peak XV GP, LLC; and Peak XV Fundamental Value, LP. Chugh is named as a defendant individually and as trustee of the RC Family Trust.

1

Procedure, arguing that collateral estoppel is not appropriate in this case. For the reasons stated below, following reconsideration, I adhere to the ruling that the defendants are entitled to summary judgment, albeit on somewhat different reasoning. Accordingly, TAL's motion (doc. # 353) is DENIED.

**I.    Standard of Review**

The standard for granting motions for reconsideration is strict; motions for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). Motions for reconsideration will not be granted where the party merely seeks to relitigate an issue that has already been decided. *Id.* The three major grounds for granting a motion for reconsideration in the Second Circuit are: (1) an intervening change of controlling law, (2) the availability of new evidence, or (3) the need to correct a clear error or prevent manifest injustice. *Virgin Atlantic Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citing 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 4478).

**II.    Background**

I assume the parties' familiarity with the factual and procedural history of this case. What follows is a brief summary of the relevant facts and circumstances. In 2006 Kalra and Chugh created TAL, an investment advisory company specializing in Indian real estate and infrastructure. TAL was wholly owned by Chugh's and Kalra's families, with each family owning a fifty percent interest in the company. The Chugh family's shares were placed in two companies, ARC and Haida Investments ("Haida"). The Kalra family's shares were held by

Asia Pacific Investments, Ltd. ("Asia Pacific"). The 2008 economic crisis put financial pressure on the business venture, and the relationship between Kalra and Chugh deteriorated. Kalra and Chugh negotiated unsuccessfully to divide TAL's assets. During this period, Chugh formed Peak XV, which Kalra claims competed with TAL. Kalra also accused Chugh of misappropriating TAL's valuable customer database for use in his new ventures. Chugh was eventually expelled from TAL's board of directors and Kalra took control of TAL and its assets.

Asia Pacific, controlled by Kalra, filed this lawsuit derivatively on behalf of TAL in late 2011. TAL ultimately adopted the litigation in its own name, though the suit is still controlled by Kalra. TAL claims that Chugh, individually and through his control of ARC, Haida, and Peak XV, committed willful, material, severe and ongoing breaches of fiduciary duty. TAL's third amended complaint alleges a total of eleven causes of action against Chugh, ARC and Peak XV, including breach of fiduciary duty, unfair competition, misappropriation of trade secrets, civil conspiracy, conversion, statutory theft, aiding and abetting breach of fiduciary duty, unjust enrichment, abuse of process, veil piercing, and replevin.

There have been multiple proceedings around the world related to this case, but for purposes of TAL's motion for reconsideration, the only relevant action is the winding up proceeding held in the Grand Court of the Cayman Islands ("Grand Court"). That proceeding was brought by ARC and Haida (Chugh) against Asia Pacific (Kalra) on February 13, 2012, about six weeks after TAL filed its original complaint against Chugh in the District of Connecticut.

From the outset, both parties and this court were aware that the Cayman proceeding was going to complicate the proceedings in this court. TAL moved (unsuccessfully) for an anti-suit injunction to enjoin the Cayman proceeding pending the resolution of this case, arguing that the


claims brought in the Cayman proceeding were essentially compulsory counterclaims and that the proceeding was brought merely to frustrate this court's handling of the case.  *See* Mot. to Enjoin (doc. # 220).  The defendants opposed that motion, arguing in relevant part that the Cayman proceeding involved different parties and different claims, and the relief available in that proceeding differed from the relief available to the plaintiff here.  *See* Defs.' Opp'n to Mot to Enjoin 13, 19-20, 23-25 (doc. # 240); Pl.'s Opp'n to Mot. Summ. J. 28-29 (doc. # 320).  During the Cayman trial, however, Asia Pacific (Kalra) attempted to defend against the winding up of TAL on the ground of unclean hands, arguing that the petitioners, ARC and Haida, were barred from invoking the court's equitable jurisdiction because of Chugh's breaches of fiduciary duty, which were attributable to the petitioners.  As evidence of Chugh's misconduct, Asia Pacific put on evidence relating to each of TAL's claims in this litigation.

On January 31, 2013, the Grand Court issued its judgment and granted the petition to wind up TAL.  Justice Jones concluded that, taken together, a "series of related grounds" – primarily loss of substratum, but also Chugh's exclusion from the board of directors and Kalra's subsequent misuse of the company's money, among other things – produced an "overwhelming" case for making a winding up order.  Winding Up Order and Judgment 14.  Justice Jones thoroughly rejected Asia Pacific's unclean hands defense, remarking that "there is no merit whatsoever to the allegations made against Chugh in . . . the Connecticut proceedings." *Id.* at 15. Justice Jones further stated that, "[h]aving listened to [Kalra's] explanation for pursuing this claim in the Connecticut proceedings, I can conclude that it is a thoroughly dishonest abuse of process." *Id*. at 9.

After the Grand Court issued its ruling, the defendants filed a motion for summary judgment (doc. # 308), arguing that res judicata and collateral estoppel precluded relitigation of

TAL's claims. The defendants asserted that TAL's claims were barred because Asia Pacific litigated and lost on all of the claims and issues in this case in the Cayman proceeding.[2] TAL opposed that motion, arguing that its claims could not have been brought in the Cayman proceeding and that no issue or fact decided in the Grand Court was binding in this court. TAL also asserted that even if res judicata or collateral estoppel applied, Chapter 15 of the U.S. Bankruptcy Code bars recognition of the Grand Court's Winding Up Order and Judgment.[3]

During the March 6, 2014 hearing on the defendants' motion for summary judgment, I issued an oral ruling holding that res judicata did not bar the plaintiff's claims, but that the facts found in the Cayman proceeding were binding on the basis of collateral estoppel. Accordingly, I granted the defendants' motion for summary judgment. On April 3, 2014, TAL filed this motion for reconsideration.

## III.   Discussion

In its motion for reconsideration, TAL renews its arguments that: (1) Chapter 15 of the U.S. Bankruptcy Code bars recognition of the Grand Court's Winding Up Order and Judgment, because it originates from a location where TAL had no main business or even non-main business; (2) the Cayman Proceeding was *in rem* and, therefore, cannot have preclusive effect in this *in personam* proceeding; (3) the parties in both proceedings are not identical; and (4) the Grand Court relied on multiple, alternative grounds for winding up the entity, none of which was essential to the judgment; therefore, collateral estoppel does not bar relitigation of the relevant issues.

---

[2] Specifically, the defendants argued that Justice Jones found there was: (1) no breach of fiduciary duty by Chugh; (2) a contractual waiver of TAL's claims; (3) no collusion with TAL's litigation adversaries; (4) no aiding of TAL's litigation adversaries; (5) no forcing TAL into adverse settlements; (6) no impeding of TAL's corporate advisers; (7) an agreement between the parties to establish independent businesses; (8) no misappropriation of TAL's property; (9) no competition by Peak XV against TAL; (10) no violation by Chugh of an agreement to use only the assets that he was permitted to use; and (11) no theft by Chugh of TAL's customer database.

[3] TAL raised all of those rationales at oral argument, except for the argument about the Bankruptcy Code.

The first three grounds are entirely without merit and represent an improper attempt to relitigate points already decided.  *See Shrader*, 70 F.3d at 257.  First, "[C]hapter 15 of the Bankruptcy Code does not preempt . . . common-law principles of international comity as applied to foreign bankruptcy discharge orders issued to individual foreign debtors."  *Barclays Bank PLC v. Kemsley*, 44 Misc. 3d 773, 779, 992 N.Y.S.2d 602 (Sup. Ct. 2014); *see also Cybernaut Capital Mgmt Ltd. v. Partners Grp. Access Secondary 2008, L.P.*, No. 13 Civ. 5380 (WHP), 2013 WL 4413754, at * 2-4 (S.D.N.Y. Aug. 7, 2013) (holding issue preclusion barred relitigation of issue decided in Cayman winding-up proceeding without discussion of Chapter 15 recognition).  The parties agree that Connecticut law applies in this diversity suit and neither party disputes that Connecticut courts would recognize the Grand Court's judgment as a matter of comity.[4]  *See, e.g.*, *Litvaitis v. Litvaitis*, 162 Conn. 540, 544 (1972) ("[J]udgments of courts of foreign countries are recognized in the United States because of the comity due to the courts and judgments of one nation from another.").

Second, it is well established that issues decided in *in rem* proceedings may be binding on the parties or their privies in a subsequent *in personam* suit.[5]  *See Myers v. Int'l Trust Co.*, 263

---

[4] At the summary judgment stage, TAL asserted in a footnote that the Grand Court's judgment should not be recognized as a matter of comity.  I rejected that argument and TAL does not dispute that aspect of my decision in its motion for reconsideration.

[5] In determining the preclusive effects of a foreign judgment, American courts generally will apply the foreign court's rules of res judicata and collateral estoppel as a matter of comity if that court's rules are "substantially the same as the rules of the American court."  Restatement (Second) of Conflict of Laws § 98, cmt. f; *Diorinou v. Mezitis*, 237 F.3d 133, 142 (2d Cir. 2001).  It is unclear whether Connecticut courts would apply their own or Cayman preclusion doctrine (which follows English preclusion doctrine) due to apparent differences between Cayman and Connecticut law – e.g., the preclusive effects of an *in rem* proceeding on a subsequent *in personam* suit.  *Compare, e.g.*, Restatement (Second) of Judgments § 30, cmt. d (1982) *with* Spencer, Bower and Handley, *Res Judicata* 10.04 (4th Ed. 2009).  In their briefing on the motion for reconsideration, however, the parties all assume that Connecticut preclusion doctrine applies.  In light of the parties' agreement, I will apply Connecticut preclusion doctrine without resolving whether Connecticut courts would apply their own collateral estoppel law.  *See, e.g.*, *United States v. Kashmanu*, 656 F.3d 679, 684-85 (7th Cir. 2011) (noting that differences between English and American preclusion doctrine made it unclear whether federal courts should apply the federal common law of issue preclusion or foreign preclusion doctrine, but declining to resolve the issue because the parties assumed that federal common law applied; *see also* Restatement (Third) of Foreign Relations Law § 481, cmt. c (1987) ("[N]o rule prevents a court in the United States from giving greater preclusive effect to a judgment of a foreign state than would be given in the courts of that state. For instance, if an action growing out of an airline disaster is brought in

U.S. 64, 70-73 (1927); Restatement (Second) of Judgments § 30, cmt. d (1982); *Johnston v. Arbitrium (Cayman Islands) Handels AG*, 198 F.3d 348 n.1 (2d Cir. 1999) (citing *Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 369 (2d Cir. 1995)). Moreover, Connecticut has abandoned the mutuality-of-parties rule. Only the party against whom preclusion will be invoked need have been a party in the prior proceeding or in privity with a party to the prior proceeding. *See, e.g.*, *Aetna Cas. & Sur. Co. v. Jones*, 220 Conn. 285, 300-04 (1991) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326-33 (1979); *Blonder-Tongue Lab., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 328-29 (1971)). Neither party disputes that TAL is in privity with Asia Pacific; thus, TAL's second and third grounds for reconsideration fail as a matter of law.

TAL's fourth ground for reconsideration, however, merits some attention. Collateral estoppel, or issue preclusion, prevents a party from relitigating an issue that was actually and necessarily determined in a prior suit. *See, e.g.*, *Lighthouse Landings, Inc. v. Connecticut Light and Power Co.*, 300 Conn. 325, 343-44 (2011); *Cumberland Farms, Inc. v. Town of Groton*, 262 Conn. 45, 58 (2002); *Virgo v. Lyons*, 209 Conn. 497, 501 (1988). Under Connecticut law, which adheres to the Second Restatement of Judgments, an issue is not *necessarily* determined unless it is *essential* to the judgment, that is, unless "the judgment could not have been validly rendered" without deciding that issue.[6] *E.g.*, *Lyon v. Jones*, 291 Conn. 384, 406 (2009) (internal citations omitted); *Dowling v. Finley Assocs., Inc.*, 248 Conn. 364, 374 (1999); Restatement (Second) of Judgments § 27.

---

foreign state A, and in that action the airline has been determined to have been negligent, a plaintiff in an action in the United States might be able to rely on that determination, even if the law of state A would require full identity of parties before giving preclusive effect to the determination in the first action.").

[6] Cayman law, which follows English law, is apparently in accord. *See* Spencer, Bower and Handley, Res Judicata 8.24 ("The question is whether the determination was so fundamental that the decision cannot stand without it.") (citing *Blair v. Curran*, 62 CLR 464, 533 (1939)).

"If an issue has been determined but the judgment is not dependent on that issue, the parties may relitigate that issue in a subsequent action." Restatement (Second) of Judgments § 27, cmt. h. That is true even if the prior court actually decided the non-essential issue, and thoroughly supported its findings. *See id.*; *see also Coyle Crete, LLC v. Nevins*, 137 Conn. App. 540, 554-55 (2012) (collateral estoppel did not bar relitigation of whether defendant wrongfully withheld plaintiff's funds, because defendant did not show that prior court necessarily had to determine whether defendant wrongfully retained plaintiff's funds in deciding whether plaintiff's money judgment against third party was satisfied). The rationale underlying this rule is that "[f]indings on nonessential issues usually have the characteristics of dicta." *E.g.*, *Lyon*, 291 Conn. at 406 (citing Restatement (Second) of Judgments § 27, cmt. h).

Under the Second Restatement, collateral estoppel likewise does not apply where the court of first instance based its decision on multiple grounds, any of which would have been sufficient to support the result.[7] Restatement (Second) of Judgments § 27, cmt. i; *Dowling*, 248 Conn. at 378 (citing cmt. i). Comment i to section 27 takes that approach even though "[t]he matter presumably has been fully litigated and fairly decided; the determination does support, and is in itself sufficient to support, the judgment for the prevailing party; and the losing party is

---

[7] Comment i directly contradicts the position taken in Restatement (First) of Judgments. The First Restatement provides:

> Where the judgment is based upon the matters litigated as alternative grounds, the judgment is determinative on both grounds, although either alone would have been sufficient to support the judgment. Thus, if the defendant interposes two defenses on each of which issue is taken, and both of the issues are found in favor of the defendant, a judgment for the defendant is not based on one of the issues more than on the other; and it must be said either that both are material to the judgment or that neither is material. It seems obvious that it should not be held that neither is material, and hence both should be held to be material.

Restatement (First) of Judgments § 68, cmt. n (1942). Ironically, the Second Restatement's position is derived from the Second Circuit case *Halpern v. Schwartz*, 426 F.2d 102 (2d Cir. 1970), which explicitly announced an exception to the generally sound rule of the First Restatement, and which the Second Circuit subsequently limited to its facts. *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 45 (2d Cir. 1986).

8

in a position to seek reversal of the determination from an appellate court."[8]  Restatement (Second) of Judgments § 27, cmt. i

The Connecticut Supreme Court has never squarely addressed the applicability of comment i in a case like this one, where the petitioner advanced several grounds and the judge expressly articulated reasons supporting each in his decision.  The Connecticut Supreme Court has, however, cited comment i with approval.  *See Dowling*, 248 Conn. at 378; *but see World Wrestling Entm't, Inc. v. THQ, Inc*., No. X05CV065002512S, 2008 WL 4307568, at * 6 n.4 (Conn. Super. Aug. 29, 2008) (distinguishing *Dowling* and noting, in case involving federal rather than Connecticut preclusion rules, that comment i is "of dubious value," because Second Restatement directly opposes First Restatement by adopting *Halpern*'s exception as a general rule).  Given Connecticut's strict interpretation of the "essentiality" requirement, it seems likely – though unfortunate in my view – that the Connecticut Supreme Court would apply the logic of comment i in this case.  *See, e.g.*, *Lyon*, 291 Conn. at 406 ("An issue is *necessarily* determined if in the absence of a determination of the issue, the judgment could not have been validly rendered.").  If there are multiple grounds supporting a decision, any of which would have been sufficient, then it is difficult to conclude that a judgment "could not have been validly rendered" without any one of them.

The issue before the Grand Court was whether to wind up TAL.  Under Cayman Law, a court may wind up a company if "the Court is of opinion that it is just and equitable that the company should be wound up."  Cayman Islands Companies Law V.92 (2013 Revision).  As TAL highlighted in its brief opposing the defendants' motion for summary judgment, there are numerous reasons a judge may find that it is "just and equitable" for a company to be wound up.

---

[8] Comment i recognizes that there may be cases, like this one, where the issues were litigated so fully that the balance tips in favor of preclusion, but nevertheless advocates for a uniform rule.  *Id.*

*See* Pl.'s Opp'n to Mot. Summ. J. 35-41.  In the Cayman proceeding, ARC and Haida asserted "a series of related grounds on which the Court should conclude that it is just and equitable to make a winding up order," including several that directly bear on the issues here.  *See* Winding Up Order and Judgment 9.  In his decision, Justice Jones analyzed all of those grounds, finding that there was evidence to support each, and concluded that "[t]aken together, the case for making up a winding up order is overwhelming." *Id.* at 14.

At oral argument, I felt that the phrase "taken together" was critical.  Justice Jones' decision indicates that he would not have reached the same conclusion in the absence of any of those factual findings; "taken together," they were essential to the decision to wind up the entity.  I viewed those grounds not as alternatives, but rather as a series of facts upon which the Court relied.  *See* Restatement (Second) of Judgments § 27, cmt. j. Yet a close rereading of the Justice Jones' ruling reveals that the phrase "taken together" does not necessarily mean that all findings were essential.  Rather, it could indicate that the applicability of multiple grounds simply provides a stronger case for a ruling than each ground individually would support.  The Grand Court expressed several reasons why TAL should be wound up, but the absence of one or more of those determinations might not necessarily have precluded the judgment.[9]

Nevertheless, my ruling at the summary judgment stage was correct, even if the grounds upon which it was based were incorrect.  Comment i distinguishes between a situation where a

---

[9] In my estimation, comment i's approach to issue preclusion yields undesirable, counterintuitive results.  Because the case for winding up TAL was especially strong – not just one but multiple independently sufficient grounds were present – the Second Restatement provides that the matter has not been put to rest but must be litigated again.  It is odd that a doctrine designed to promote fairness and efficiency would mandate relitigation of material issues fully and fairly litigated, and actually decided, simply because the judge set forth more than a single reason for his decision.  *See* Wright & Miller, 18 Fed. Prac. & Proc. Juris. § 4421 (2d ed.) ("There is little reason to infer that broadly based decisions are reached with less care than narrow decisions; indeed, the opposite inference is at least as attractive. . . . It is particularly appropriate to avoid such speculation as to decisions that have justified broad equitable remedies on the basis of multiple findings.").  Although I predict the Connecticut Supreme Court would continue to adhere to the Second Restatement approach to issue preclusion, I urge that Court to return to the more sensible First Restatement approach.

judgment is based on alternative determinations, any one of which would have been sufficient to resolve the matter, and one "in which there are alternative bases for a determination that is essential to the judgment." Restatement (Second) of Judgments § 27, cmt. i. The multiple grounds for winding up TAL may well reflect the former situation, but Justice Jones' rejection of Asia Pacific's defense falls squarely within the latter.

In the winding-up petition, ARC and Haida asserted that TAL was a quasi-partnership formed on the legitimate expectation that the parties would participate in its management. They argued that it was just and equitable to wind up TAL because there had been a breakdown in the relationship of mutual trust and confidence between Chugh and Kalra, which had led to Chugh's improper removal as a director of TAL. Throughout the Cayman proceeding, Asia Pacific defended against the winding-up petition by attacking that contention. Asia Pacific argued: (1) that the petition should be dismissed as an abuse of process; and (2) that petitioners were barred from invoking the Grand Court's equitable discretion because they came to the Court with unclean hands.[10] *See* Mem. Supp. Mot. Summ. J. Ex. T (Resp't Am. Def. ¶¶ 20, 27, 37, 51, 53, 56, 61-62) (doc. # 308-7).

Prior to the trial in the Grand Court, Asia Pacific argued that the petition to wind up TAL should be dismissed as an abuse of process, because it was brought for the improper collateral purpose of undermining or sabotaging the various proceedings between the parties in Connecticut. *See* Pl.'s Opp'n Mot. Summ. J. Ex. 5 (Grand Court Order of Sept. 4, 2012 ¶ 12) (doc. # 321-1). The petitioners, it was asserted, did not truly care whether TAL was wound up; rather, they intended to use the winding up proceeding to impede TAL's ability to pursue its

---

[10] Asia Pacific also argued that the petition should be dismissed as an abuse of process because there was an adequate alternative remedy available to the petitioners – they could sell their shares to the company (and Kalra would pay for them). That argument was also litigated and rejected in the Cayman proceeding, but it is not necessary to address it in this decision, because TAL's claims do not relate to its offer to purchase the petitioners' shares.

11

legitimate claims of breach of fiduciary duty against Chugh and the entities, including the petitioners, that he controlled.  *Id.*

After reviewing all of the evidence, Justice Jones concluded that the petitioners sought to wind up TAL for legitimate reasons.  The relationship between the parties had clearly broken down and TAL was not going to be able to conduct business with both Kalra and Chugh at the helm.  Chugh's removal as a director was *prima facie* invalid, whether or not he had breached his fiduciary duties to TAL, because Chugh was not given notice of the meeting during which the board voted to remove him from office.  *Id.* ¶ 13.  Additionally, the timing of his removal indicated that Kalra's intended purpose in having Chugh removed was to enable TAL to bring this claim in its own name, rather than as a derivative action through Asia Pacific, in order to pay for this litigation using TAL's assets.  *Id.*  Thus, the winding up petition was not brought for an illegitimate purpose and therefore should not be dismissed as an abuse of process.  *Id.*

The fact that the petitioners were successful in obtaining a winding up order further confirms that the petition was not an abuse of process.  Moreover, Asia Pacific renewed its abuse of process argument on appeal, and again lost on this issue.  *See* Letter from Aashish Kalra Dated June 4, 2015 Ex. 2 (Court of Appeals of the Cayman Islands ("Cayman Appeals Court"), Reasons for Judgment and Judgment Costs on Appeal ¶ 48) (doc. # 376).[11]  TAL cannot now prevail in this lawsuit on its abuse of process claim, because it is abundantly clear that the petitioners did not institute the Cayman proceeding for an improper purpose.

Regarding the unclean hands defense, Asia Pacific argued that Chugh, whose conduct was attributable to the petitioners, had breached his fiduciary duties to TAL. Chugh's egregious breaches of fiduciary duty made his removal from the board legitimate and, consequently,

---

[11] The court received two letters and numerous exhibits purporting to support TAL's motion for reconsideration on June 4 and 5, 2015.  *See* docs. # 376 & 377.  The letters were sent from Kalra, not from plaintiff's counsel.  Included among the exhibits was the Judgment of the Court of Appeals of the Cayman Islands ("Cayman Appeals Court").

rendered the winding-up petition improper.  The evidence offered in support of the unclean hands defense mirrored TAL's claims in this lawsuit.  *See generally* Third Am. Compl. (doc. # 257).  First, Asia Pacific argued that Chugh established Peak XV, whose business would directly compete with TAL, and that he stole TAL's assets and its customer database and misused those assets and that database to develop the rival business.  *See* Mem. Supp. Mot. Summ. J. Ex. C (Cayman Trial (Jan. 7, 2013) Tr. at 153-71; Cayman Trial (Jan. 8, 2013) Tr. at 14-75, 123-33; Cayman Trial (Jan. 9, 2013) Tr. at 3-39) (doc. # 308-4); Resp't Am. Def. ¶ 20; *see also* Winding Up Order and Judgment 10, 16.

      Second, Asia Pacific asserted that Chugh supported QVT's hostile takeover of Trinity (a fund managed by TAL), paid QVT £2,000,000 of TAL's money for covenants of extremely limited value, and deliberately frustrated attempts to recover the money when QVT breached those covenants, all to the detriment of TAL.  Cayman Trial (Jan. 8, 2013) Tr. at 76-123; Cayman Trial (Jan. 9, 2013) Tr. at 39-78, 98-128, 151, 201, 210-12; Cayman Trial (Jan. 10, 2013) Tr. at 8-40; Resp't Am. Def. ¶ 20; *see also* Winding Up Order and Judgment 5-8, 16.  Third, Asia Pacific argued that Chugh frustrated lucrative business deals for TAL, including merger possibilities, which would have generated significant profits for the company.  Cayman Trial (Jan. 9, 2013) Tr.  at 76, 98-108, 179-81, 189, 211-14; Cayman Trial (Jan. 10, 2013) Tr. at 21-32, 39, 100-05; Resp't Am. Def. ¶ 20; Winding Up Order and Judgment 7-8, 15-17.  Finally, Asia Pacific asserted that Chugh deliberately negotiated unfavorable settlements on TAL's behalf and that he forced Kalra to sign the settlements, thereby denying TAL's recovery of compensation to which it would have been entitled.  *See* Cayman Trial (Jan. 9, 2013) Tr. at 68-75, 83-93, 154, 178-81, 189, 198-203, 210, 222-27; Resp't Am. Def. ¶ 20; *see also* Winding Up Order and Judgment 8-10, 12-13, 15-16.

Importantly, the unclean hands defense was designed not merely to rebut one of the grounds for winding up TAL, but to deprive the Grand Court of jurisdiction altogether.[12]  The unclean hands defense was a dispositive issue in the Cayman proceeding and the bulk of the winding up proceeding was devoted to the parties' attempts to prove or disprove Chugh's alleged misconduct.  *See, e.g.*, Cayman Trial (Jan. 7, 2013) Tr. at 103-04, 118, 161-62; Cayman Trial (Jan. 8, 2013) Tr. at 15, 144, 151-52; Cayman Trial (Jan. 9, 2013) Tr. at 97; Cayman Trial (Jan. 10, 2013) Tr. at 86-88; Cayman Trial (Jan. 18, 2013) Tr. at 61-71.

Justice Jones analyzed all aspects of Asia Pacific's defense and rejected the defense in its entirety.  *See generally* Winding Up Order and Judgment**.**  His findings were upheld on appeal.  Moreover, the Cayman Appeals Court recognized that if Asia Pacific's unclean hands defense had prevailed the petition would have been struck as an abuse of process.  Cayman Appeals Court Judgment ¶¶ 56-57.  Any one of the bases of claimed misconduct would have been sufficient to sustain the defense.  It was therefore necessary for Justice Jones to decide all of the issues related to Chugh's alleged misconduct in order to reject Asia Pacific's defense of unclean hands.  If Justice Jones had found in Asia Pacific's favor on any of those issues, the petitioners would have been barred from seeking relief.  *See id.* ¶¶ 49-57.  Thus, the findings that I viewed as essential to the decision to wind up TAL were, in fact, essential to Justice Jones' rejection of Asia Pacific's defense.  *See* Restatement (Second) of Judgments § 27, cmt. i.  Having chosen to fight the winding up petition by advancing as a defense all of the substantive claims raised in this litigation, the plaintiff cannot now avoid the consequences of its actions.  Even under the Second Restatement's restrictive approach, the plaintiff's claims are barred by the doctrine of issue preclusion.

---

[12] On appeal, Asia Pacific framed its unclean hands defense as an alternative, though no less dispositive, ground for dismissing the petition as an abuse of process.  *See* Cayman Appeals Court Judgment ¶¶ 49-50.

**IV.     Conclusion**

For the foregoing reasons, the plaintiff's motion for reconsideration is DENIED.

It is so ordered.

Dated at Bridgeport, Connecticut, this 5th day of June 2015.

                                                                /s/ STEFAN R. UNDERHILL
                                                                Stefan R. Underhill
                                                                United States District Judge